# EXHIBIT A

# MUELLER SYSTEMS
# MASTER AGREEMENT

THIS MASTER AGREEMENT (this "**Agreement**") is entered into effective as of February 6, 2017, by and between MUELLER SYSTEMS, LLC, a Delaware limited liability company, having its principal offices at 10210 Statesville Blvd, Cleveland, North Carolina 27013 (referred to in this Agreement as "**Mueller Systems**" or "**Provider**"), and HARRIS COUNTY MUNICIPAL UTILITY DISTRICT NO. 281, OF HARRIS COUNTY, TEXAS, a body politic and corporate and governmental agency of the State of Texas, operating under and governed by the provisions of Chapters 49 and 54, Texas Water Code, as amended, and Section 59 of Article XVI of the Texas Constitution, having its principal office at 1300 Post Oak Boulevard, Suite 1400, Houston, Texas 77056 (referred to in this Agreement as "**Customer**"). This Agreement governs the sale by Provider and the purchase by Customer for its own use and not for resale of, as applicable, Equipment, Software, Documentation and other items related to advanced metrology infrastructure systems. In consideration of the mutual obligations set forth in this Agreement, Customer and Mueller Systems agree as follows:

1. **DEFINITIONS**.

a. "**Content**" means the information developed or legally acquired by Customer which may be used in connection with or accessed by any module of the Software.

b. "**Documentation**" means the user guides, reference manuals, and installation materials provided by Provider to Customer related to the Software and Equipment.

c. "**Equipment**" means the components, devices, products, equipment and related items provided by Provider identified in Appendix B.

d. "**Services**" means activities related to deployment and installation services, repair services, hosting services and technical support/maintenance services as identified in Appendix B.

e. "**Software**" means the object code versions of Mueller Systems' software identified in Appendix A, together with all subsequent authorized updates, replacements, modifications or enhancements.

2. **SOFTWARE**

a. License. Provider hereby grants to Customer, a limited, non-exclusive, nontransferable license (without the right of sublicense) to, in connection with the Equipment, use, install, run, execute, display and, subject to the restrictions described below, duplicate and distribute internally, the Software and Documentation solely for Customer's internal information management and processing purposes.

b. Restrictions. Except as specifically and expressly permitted in writing by Mueller Systems, Customer shall not (i) violate any restriction set forth in this Agreement; (ii) modify, translate, decompile, reverse compile, disassemble, or create or attempt to create, by reverse engineering or otherwise, the source code from the object code of the Software; (iii) adapt the Software in any way for use to create a derivative work; (iv) include or combine the Software in or with any other software; or (v) use the Software to provide processing services to third parties or on a service bureau basis. Except as expressly permitted in this Agreement, Customer may not copy the Software other than to make one machine readable copy for disaster recovery or archival purposes. Customer may only make copies of Documentation as reasonably necessary for the use contemplated herein and with proper inclusion of Mueller Systems' copyright notices.

c. Ownership. This Agreement does not grant to Customer any ownership interest in the Software or Documentation. Customer has a license to use the Software and Documentation as provided in this Agreement. Customer hereby agrees and acknowledges that Mueller Systems owns all right, title, and interest in the Software and Documentation, and Customer will not contest those rights or engage in any conduct contrary to those rights. Any copy, modification, revision, enhancement, adaptation, translation, or derivative work of or created from the Software and Documentation made by or at the direction of Customer shall be owned solely and exclusively by Mueller Systems, as shall all patent rights, copyrights, trade secret rights, trademark rights and all other proprietary rights, worldwide.

d. Reservation. Mueller Systems reserves all rights not specifically granted under this Agreement.

Host – 01.16　　　　　　　　　　　　　0

3. **EQUIPMENT** In consideration of Customer's payment of the purchase price set forth in Appendixes B and B-1, Mueller Systems will provide the Equipment identified in Appendixes B and B-1.

4. **SERVICES** In consideration of the annual maintenance fees set forth in Appendix B-1 of this Agreement, Mueller Systems will provide the Software Services and Support Obligations, and Software Hosting Services, identified in Appendix B.

5. **CONFIDENTIALITY** The Software, Equipment and Documentation, including any ideas, concepts, know-how and technology contained therein shall be considered the proprietary and confidential information of Mueller Systems and, as such, shall be subject to the confidentiality provisions of this Agreement to the extent allowed by law. Mueller Systems acknowledges that the Customer is a political subdivision of the State of Texas and subject to the requirements under the Texas Public Information Act, Chapter 552, Texas Government Code, and the Texas Local Government Records Act, Chapter 201, Local Texas Government Code. Mueller Systems agrees that proprietary and confidential information as outlined herein shall not be deemed to include information that is "public information" subject to disclosure under the Texas Public Information Act and/or Texas Local Government Records Act. If a separate, written non-disclosure agreement exists between Mueller Systems and Customer, such agreement will control and will apply according to its terms and conditions to all confidential information the parties exchange with each other. If no separate, written non-disclosure agreement exists between Mueller Systems and Customer, the terms listed in Appendix C will apply to the confidential information the parties exchange with each other, except as set forth above.

6. **FEES AND PAYMENT**

a. Software Fees. Customer shall pay the annual Software fees set forth in Appendix B-1 of this Agreement.

b. Equipment Fees. Customer shall pay the Purchase Price set forth in Appendixes B and B-1, of this Agreement. Title to the Equipment, except the Software and Documentation that are subject to licenses provided in this Agreement, passes from Mueller Systems to Customer when Mueller Systems ships the Equipment.

c. Service Fees. Customer shall pay the annual Service fees set forth in Appendix B-1 of this Agreement.

d. Taxes. All prices and fees are in U.S. dollars unless otherwise specified. All amounts payable under this Agreement are exclusive of all sales, use, value-added, excise, property, withholding, and other taxes and duties. Customer will pay all taxes and duties assessed by any authority in connection with this Agreement and with Customer's performance hereunder. Customer will promptly reimburse Mueller Systems for any and all taxes or duties that Mueller Systems may be required to pay in connection with this Agreement or its performance. This provision does not apply to taxes based on Mueller Systems' income, or any taxes for which Customer is exempt, provided Customer has furnished Mueller Systems with a valid tax exemption certificate.

e. Payment. Unless provided otherwise herein, Customer agrees to pay all amounts specified in Appendix B-1 or otherwise due under this Agreement within thirty (30) days after the date of invoice. Past due amounts will shall bear interest from the due date until paid at a rate of (i) one and one-half percent (1.5%) per month or (ii) the maximum rate permitted by Texas law, whichever is less. All payments made under this Agreement shall be nonrefundable, except as specifically provided otherwise in this Agreement.

7. **TERM; TERMINATION**

a. Term. The term of this Agreement is one (1) year commencing

upon the effective date of this Agreement. This Agreement will automatically renew for subsequent, successive one (1) year periods at the then-current Mueller Systems prices unless either party gives the other party written notice of its intent to not renew at least thirty (30) days prior to the expiration of the then current term. Mueller Systems may increase support fees at any time on thirty (30) days prior notice to Customer. Within such thirty (30) days, Customer may terminate the Agreement by providing written notice to Mueller Systems.

b.      Termination for Breach. If either party breaches this Agreement, and such breach is not cured within ten (10) days of receipt of written notice of the breach, the non-breaching party may terminate this Agreement, including all licenses provided herein, effective upon written notice to the other party. The breaching party agrees that if it breaches this Agreement, the non- breaching party will be entitled to injunctive or similar equitable relief.

c.      Effect of Termination. Termination of this Agreement shall have the effect designated in Appendix B.

d.      Non-Exclusive Remedy. Termination of this Agreement or any license granted hereunder shall not limit the remedies otherwise available to either party, including injunctive relief.

## 8. LIMITED WARRANTIES; REMEDIES

a.      Software. Subject to the exclusions herein, including those in Appendix A, Mueller Systems warrants that commencing from the date of installation of the Equipment by the Customer and continuing for the period set forth in Appendix A (the "**Warranty Period**"), (i) the media on which the Software is furnished will be free of defects in materials and workmanship under normal use; and (ii) the Software will perform substantially in conformance with the applicable Documentation provided to Customer by Mueller Systems. Notwithstanding anything in this Agreement to the contrary, Mueller Systems shall contemporaneously with the Customer's installation of the Equipment, install the network (which works with the Customer's billing system), collectors, and repeaters related to the Equipment to be installed by the Customer. Mueller Systems does not warrant that the Software will operate in combinations with other software, except as specified in the Documentation, that the Software will meet the Customer's requirements or that the operation of the Software will be uninterrupted or error-free. Customer assumes responsibility for taking adequate precautions against damages which could be caused by defects, interruptions or malfunctions in the Software or the hardware on which it is installed. Mueller Systems' entire obligation and Customer's exclusive remedy with respect to the Software warranties set forth above shall be, at Mueller Systems' option, to either (x) repair or replace any Software containing an error or condition which is reported by Customer in writing to Mueller Systems which causes the Software not to conform with the warranty set forth herein; or (y) refund the amount previously paid by Customer to Mueller Systems and terminate this Agreement and all licenses provided herein.

b.      Services. Mueller Systems warrants that all services provided by it to Customer under this Agreement shall be performed in a workmanlike manner. Mueller Systems' entire obligation and Customer's exclusive remedy with respect to the Service warranties shall be in accordance with Section 8.a. above.

c.      Equipment. Subject to the exclusions herein, including those in Appendix A, Mueller Systems warrants to Customer that the Equipment will be free from defects in material and workmanship for the periods specified in Appendix A, beginning on the date the Equipment is installed by Customer. Claims under this Section will be considered if submitted to Mueller Systems within sixty (60) days following the discovery of any defect covered by this Section and provided Mueller Systems or its agents are permitted a commercially reasonable opportunity to examine and analyze the material or workmanship claimed to be defective. Mueller Systems' entire obligation and Customer's exclusive remedy with respect to the Equipment warranties set forth herein, at Mueller Systems' option, is repair or replacement of any Equipment found defective during the applicable warranty period after such Equipment is properly packaged and returned prepaid to Mueller Systems' designated service center.

d.      Costs. Any and all costs associated with uninstalling and shipping defective Equipment and Software and installing replacement

Equipment and Software will be the responsibility of Customer. Customer agrees to furnish Mueller Systems reasonable access to such Equipment and Software. During the warranty prior for infrastructure type products listed as Hardware or Software in Appendix A, Mueller Systems will pay any and all costs associated with installations and shipping of defective Equipment and Software.

e.  Exclusions. The warranties provided by Mueller Systems shall not apply to Equipment and/or Software which: (i) have been altered, except with the express written consent, permission or instruction of Mueller Systems, (ii) have been used in conjunction with another product resulting in the defect, except for those third party products specifically approved by Mueller Systems, (iii) were other than the most current version of the Software (but only if Mueller Systems had made the most current version available to Customer and to the extent that any failure of the Software would have been avoided by the use of the most current version), (iv) have been damaged by improper environment, abuse, misuse, accident, negligence (except sole negligence of the Provider), act of God, excessive operating conditions, or unauthorized attachments or modifications, (v) have not been properly installed and operated by Customer in accordance with the Documentation, or as otherwise instructed by Mueller Systems, or (vi) any other exclusion set forth in any Appendix hereto.

f.  DISCLAIMERS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE WARRANTIES AND REMEDIES STATED ABOVE ARE EXCLUSIVE AND NO OTHER WARRANTIES OR REMEDIES EXPRESS, IMPLIED OR STATUTORY, APPLY TO THE DOCUMENTATION, THE SOFTWARE, THE EQUIPMENT OR ANY SERVICES TO BE PROVIDED BY MUELLER SYSTEMS UNDER THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO WARRANTIES OR CONDITIONS OF TITLE, NON-INFRINGEMENT, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, QUALITY OR PERFORMANCE, AND ANY IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE, ALL OF WHICH MUELLER SYSTEMS EXPRESSLY DISCLAIMS.

9.  **INDEMNIFICATION.** Mueller Systems will indemnify and defend Customer from all cost, fees, and expenses of any third party claim that the Software and Equipment infringe on another person's or company's patent, copyright or other intellectual property right as specified in this Section. Mueller Systems has no obligation under this Section for any claim to the extent it results from or arises out of Customer's modification of the Equipment or Software or from any combination, operation or use of the Software or Equipment with other third party products or services. Customer shall deliver to the Provider prompt notice of any claim. In the event of such a third-party claim, Mueller Systems will, at its expense and in its discretion either (a) resolve the claim in a way that permits Customer's continued ownership and use of the affected Software and Equipment, (b) provide a comparable, non-infringing replacement at no cost to Customer, or (c) accept return of the Software and Equipment, provide a reasonable depreciated refund (as agreed by the Customer) and terminate this Agreement and all licenses herein and, under any of the above options, pay all reasonable incurred costs, fees, and expenses which Customer directly incurs as a result of the claim. This Section is the exclusive statement of Mueller Systems' liability and responsibility for indemnifying Customer for infringement of intellectual property rights

10.  **LIMITATION OF LIABILITY.**

a.  MUELLER SYSTEMS' MAXIMUM LIABILITY HEREUNDER IS EXPRESSLY LIMITED TO THE TOTAL AMOUNT PAID FOR THE SOFTWARE, SERVICES, AND EQUIPMENT IN THE IMMEDIATELY PRECEDING TWELVE (12) MONTHS AND WILL UNDER NO CIRCUMSTANCE EXCEED THE AMOUNT PAID BY CUSTOMER IN THE IMMEDIATELY PRECEDING TWELVE (12) MONTHS FOR THE SOFTWARE, SERVICES AND EQUIPMENT PROVIDED BY MUELLER SYSTEMS UNDER THIS AGREEMENT. Some states do not allow the limitation and/or exclusion of liability for incidental or consequential damages, so the above limitation may not apply.

b.  The provisions of this Agreement allocate the risks between Customer and Mueller Systems. Mueller Systems' pricing reflects this allocation of risk and the limitations of liability specified herein.

11.  **NOTICE.** All notices required to be given hereunder shall be in writing. Notice shall be considered delivered and effective upon receipt when sent by registered or certified mail,

return receipt requested, addressed to the parties as set forth above. Either party, upon written notice, may change any name or address to which future notice shall be sent.

12. **GENERAL.** The Software will not be exported or re-exported in violation of any export provisions of the United States or any other applicable jurisdiction. The rights and obligations of this Agreement are personal rights granted to the Customer only. The Customer may not transfer or assign any of the rights or obligations granted under this Agreement to any other person or legal entity. Any such purported transfer or assignment shall be null and void. Each party shall be free of liability to the other party where the non-performing party is prevented from executing its obligations (except obligations to pay money) under this Agreement in whole or in part due to force majeure, such as earthquake, typhoon, flood, fire, and war or any other unforeseen and uncontrollable event but only during the duration of such event. Any modification or amendment to any of the provisions of this Agreement will be in writing and signed by an authorized officer of each party. This Agreement does not create or imply and relationship in agency or partnership between the parties. Headings are inserted for the convenience of the parties only and are not to be considered when interpreting this Agreement. The validity of this Agreement and the rights, obligations, and relationship of the parties resulting from same will be interpreted and determined in accordance with the law of the State of Texas, and applicable federal law, without regard to its choice of law provisions and venue shall be in a court of appropriate jurisdiction in Harris County, Texas. If any provision of this Agreement is contrary to and in violation of any applicable law, such provision will be considered null and void to the extent that it is contrary to such law, but all other provisions will remain in effect. The waiver or failure of either party to exercise any right herein shall not be deemed a waiver of any further right hereunder. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all other prior and contemporaneous agreements, understandings, and commitments between the parties regarding the subject matter of this Agreement.

*[Signatures Appear on the Following Page]*

EACH PARTY ACKNOWLEDGES THAT IT HAS READ THIS AGREEMENT, UNDERSTANDS IT, AND AGREES TO BE BOUND BY ITS TERMS AND CONDITIONS.

Provider

MUELLER SYSTEMS, LLC

By: *(signed)*

K. Anita Short

Name (Print or Type)

RFP Manager

Title

Customer

HARRIS COUNTY MUNICIPAL UTILITY DISTRICT NO. 281, OF HARRIS COUNTY, TEXAS

By:_____

Name (Print or Type)

Title

**EACH PARTY ACKNOWLEDGES THAT IT HAS READ THIS AGREEMENT, UNDERSTANDS IT, AND AGREES TO BE BOUND BY ITS TERMS AND CONDITIONS.**

Provider

MUELLER SYSTEMS, LLC

By: _____

<u>K. Anita Short</u>
Name (Print or Type)

<u>RFP Manager</u>
Title

Customer

HARRIS COUNTY MUNICIPAL UTILITY DISTRICT NO. 281, OF HARRIS COUNTY, TEXAS

By: _____

<u>Robert Crain</u>
Name (Print or Type)

<u>President</u>
Title

# Appendix A

## Software / Equipment

**1. AMR / AMI Products[1]:**

**Software** – Mi.Host, Mi.Data, EZReader and other software products are covered by a one (1) year warranty on material and workmanship and shall perform substantially as described with Provider then current Documentation.

**Hardware** – Mi.Node electric (Smart Meter), Mi.Hub Data Collector, Street Machine RF Receiver, PitStop handheld receivers, TRuRead™ remotes, laptops PC's, Server Hardware and all other peripheral electronic products are covered by a one (1) year warranty on material and workmanship.

**Radio Modules** – Mi.Node Water Modules and Hot Rod™ Modules are covered by a ten (10) year warranty on material and workmanship. Additionally, Mi.Node Water Modules and Hot Rod™ Modules are covered by a prorated warranty for years eleven (11) through fifteen (15) at a fifty-percent (50%) discount, years sixteen (16) through twenty (20) at a twenty-five-percent (25%) discount. Mi.Hydrant and Repeater Transceivers are covered by a ten (10) year warranty on material and workmanship. 420RDM (Remote Disconnect Valve) are covered by a five (5) year warranty on material and workmanship. Additionally, the unit is covered by a prorated warranty for years six (6) through ten (10) at a fifty-percent (50%) discount. All prorated warranty credit listed will apply to list pricing in effect at the time of the return.

**Encoder Register Products** – Hersey Translator™ Encoder registers, Hersey SSR Solid State Register, Wall Pads and Pit Pads are covered by a ten (10) year warranty on material and workmanship. Additionally, the complete unit is covered by a prorated warranty for years eleven (11) through fifteen (15) at a fifty-percent (50%) discount, years sixteen (16) through twenty (20) at a twenty-five-percent (25%) discount. The prorated warranty credit listed will apply to list pricing in effect at the time of the return.

**2. Water Metering Products:**

**Models 400, 500, MVR, RFM, FM3, HM,** and **HbMag** cold-water meters and detector check models, **EDCIV** are covered against defects in material and workmanship for a period of one (1) year from the date of installation.

**Maincases** for the above listed meters are guaranteed to be free from defects in material and workmanship for a period of twenty-five (25) years from the date of installation.

**Standard Registers** for the above listed meters are guaranteed to be free from defects in material and workmanship for a period of fifteen (15) years from the date of installation.

**Models 400 and 500** meters are guaranteed to perform to AWWA new meter accuracy standard as defined in the most current revision for a period of five (5) years from the date of installation.

**Models MVR, RFM, FM3, HM and HbMag** meters are guaranteed to perform to AWWA new meter accuracy standard as defined in the most current revision for a period of one (1) year from the date of installation.

**Models 400 and 500** meters are guaranteed to perform to AWWA repaired meter accuracy standards for the following time periods:

5/8" – Fifteen (15) years from the date of installation, or the registration of 1,750,000 U.S. gallons, whichever comes first;

3/4" – Fifteen (15) years from the date of installation, or the registration of 2,000,000 U.S. gallons, whichever comes first;

1" – Fifteen (15) years from the date of installation, or the registration of 3,000,000 U.S. gallons, whichever comes first;

1-1/2" – Fifteen (15) years from the date of installation, or the registration of 5,500,000 U.S. gallons, whichever comes first;

2" – Fifteen (15) years from the date of installation, or the registration of 8,500,000 U.S. gallons, whichever comes first.

If the above listed meters do not perform as specified, Provider will repair or replace them, at Provider's option, subject to the following:

a) Provider shall be determined to not be performing as guaranteed if it fails to pass an accuracy test, conducted by the customer according to AWWA standards. If the meter is inoperative because of foreign material, all such material must be removed prior to testing. A copy of the customer's test results must accompany the Hersey meter being returned. If the customer chooses not to test a Hersey meter before returning it, Provider will repair or replace the meter at Provider's option after the meter has been tested by Provider. When test is conducted by Provider, the customer will be charged a reasonable testing fee.

---

[1] Unless otherwise expressly stated herein, all warranty terms are provided from the date of this Agreement

# Appendix B

## Services

1.  **Software Services and Support Obligations**

    a.  "Update" to the Software means a subsequent release of the Software that Provider makes generally available to its current customers for the Software. Updates include changes and corrections to the Software as are required to keep the Software in substantial conformance with the applicable Documentation and that are created by Provider as corrections for defects in the Software. Updates shall not include any release, option or future product that Provider licenses separately. Provider shall in its sole discretion determine the nature, content, timing and release of any Updates.
    b.  Web-based support, consisting of information on the most current release of the Software through Provider's web site.
    c.  Phone support in the form of advice and counsel via telephone regarding Customer's use of the most current release of the Software, as well as Customer's connectivity and ability to access Content. Phone Support shall be provided from 8:00 AM to 5:00 PM (Eastern Standard Time), Monday through Friday, exclusive of holidays observed by Provider.

2.  **Software Hosting Services**

    a.  Except as specifically permitted in this Agreement, Customer shall have web-based access the Software hosted by Provider pursuant to this Agreement.
    b.  Provider shall provide Customer with access and related hosting services to the Software installed on Provider's servers. Provider will also install the Content provided by Customer. Provider will define the appropriate performance specifications and will host the server at a Provider's location. Provider will monitor and perform routine maintenance on the server, and if the server is not operating properly, will make a good faith effort to operate Customer's system on a backup server, if available. Access to Customer's server is restricted to authorized Provider information technology and support personnel only. Differential and full server backups are performed when reasonably practicable.
    c.  Customer shall be responsible for installing, operating and maintaining the equipment, software, and/or facilities at Customer location recommended by Provider for effective access to and use of the Software installed on Mueller Systems server. Customer shall be responsible for providing and maintaining its own Internet access and all necessary telecommunications equipment at Customer's location necessary for accessing the Software.
    d.  Upon termination, for any reason, of the Agreement or any license(s) granted herein, Provider shall immediately cease providing access to the Software and Hosting Services. Customer shall (i) immediately stop access and use of all such Provider confidential information (including Software); (ii) shall return all copies of the Software, Documentation, and any Provider confidential information to Provider; and (iii) delete all Software, Documentation, and other confidential information off of any and all storage media possessed or controlled by Customer. Customer shall provide Provider with written certification signed by an officer of Customer that Customer has complied with the provisions of this Section. Customer shall immediately pay all amounts due to Provider.

3.  **Equipment**

    a.  Mueller Systems will provide to the Customer the equipment as outlined in the Price Overview, attached as <u>Appendix B-1</u> and incorporated herein.

# Appendix C

## Confidential Information

For purposes of this Attachment, "party" or "parties" shall mean Provider and Customer, including their respective subsidiaries and affiliates who are providing information under this Agreement. The parties agree to maintain confidential information as follows except as otherwise provided by law:

1. Definition of Confidential Information. The parties understand and agree that confidential information is any and all current and future Equipment, Documentation and/or Software information, roadmap, technical or financial information, Provider's customers' names, addresses and related data, contracts, practices, procedures and other business information, including software reports, strategies, plans, documents, drawings, machines, tools, models, patent disclosures, samples, materials and requests for proposals that may be disclosed between the parties, whether written, oral, electronic or otherwise, however and wherever acquired ("Confidential Information"). Confidential Information excludes any information which would otherwise fall in the definitions above, but which was (a) known to the recipient of the information ("Recipient") before receipt from the disclosing party; (b) publicly available (or required by law to be made publicly available) through no fault of Recipient; (c) rightly received by Recipient from a third party without a duty of confidentiality; (d) disclosed by the party that provided the Confidential Information to the Recipient to a third party without a duty of confidentiality on the third party; (e) independently developed by Recipient without breach of this or any other confidentiality agreement; (f) disclosed by Recipient after prior written approval from the disclosing party; or (g) considered "public information" subject to disclosure under the Texas Public Information Act, Chapter 552, Texas Government Code, and/or the Texas Local Government Records Act, Chapter 201, Local Texas Government Code.

2. Obligations of Confidentiality and Remedies. Recipient agrees to protect the disclosing party's Confidential Information with the same degree of care, but no less than a reasonable degree of care, as Recipient uses with respect to its own Confidential Information. Neither party has any obligation to exchange Confidential Information. Both parties acknowledge and agree that the disclosure of the other party's Confidential Information could cause irreparable harm. Therefore, an injured party is entitled to applicable equitable relief, including injunctions, in addition to other remedies, for such wrongful disclosure of Confidential Information. In addition, disclosure of Confidential Information required by applicable law, a government body or court of law is not a violation of this Section if the Recipient gives prompt notice of the required disclosure to the disclosing party.

3. Term of Confidentiality Obligations. Recipient's duty to protect Confidential Information expires three (3) years from the date of disclosure by the disclosing party of the particular Confidential Information.

4. No Warranties on Confidential Information. Neither party warrants or guarantees the accuracy of any Confidential Information transferred between the parties.

449263v2

## Mueller System Overview



# Harris County MUD 281 Reivsed Price overview

| Description | Quantity | Price | Total |
|---|---|---|---|
| **Section A - AMI Network Infrastructure & Setup** | | | |
| All infrastucture to include: Network design (2) Mi.Hub Collectors, (4) Repeaters, (1) Handheld, Project Management Services, Billing Interface, (1) days of training & all material required to install Network Infrastructure | 1 | $71,348.00 | $71,348.00 |
| **Total for Section A** | | | **$71,348.00** |

| Description | Quantity | Price | Total |
|---|---|---|---|
| **Section B - Residential Water Meters W/Mi.Node Transmitter** | | | |
| Hersey 5/8 X3/4" Composite body Water Meter With Mi.Node | 798 | $190.00 | $151,620.00 |
| Hersey 1" Brass Water Meter with Mi.Node | 123 | $281.05 | $34,569.15 |
| Hersey 1-1/2" Ductile Iron Water Meter with Mi.Node | 1 | $425.15 | $425.15 |
| Hersey 2" Ductile Iron Water Meter with Mi.Node | 20 | $464.20 | $9,284.00 |
| Hersey 3" Brass Water Meter with Mi.Node | 1 | $1,210.20 | $1,210.20 |
| Hersey 4" Brass Water Meter with Mi.Node | 1 | $1,587.00 | $1,587.00 |
| **Total for Section B** | | | **$198,695.50** |

| Description | | | |
|---|---|---|---|
| **Total for Section A- B** | | | **$270,043.50** |

| Software hosting & Annual hardware maintenance | Quantity | Price | Total |
|---|---|---|---|
| AMI Premium Hosting - Utility Software (Mi.Host) | 1 | $10,000.00 | $10,000.00 |
| AMI Consumer Portal - Consumer web portal (Mi. Data) | 1 | $4,500.00 | $4,500.00 |
| Cellular Fees per collector | 2 | $420.00 | $840.00 |
| Collector Maintenance | 2 | $450.00 | $900.00 |
| Handheld Maintenace | 1 | $1,200.00 | $1,200.00 |
| **Total for Annual Maintenance** | | | **$17,440.00** |

Please feel free to contact me with any questions or concerns

Fred Quintero
Territory Manager
Cell # 704-682-0198
fquintero@muellersystems.com

## Fees

**Mi.Net Fixed Network AMI System**

| Annual Software Maintenance & Support for AMI Software Perpetual License (Non-Hosting) | | | | | |
|---|---|---|---|---|---|
| Number of Metering End Points | 3,001 – 5,000 | 5,001 – 25,000 | 25,001 – 50,000 | 50,001 – 100,000 | 100,001 or more |
| Mi.Host AMI Software Module *for Water System* | $10,000.00 | | | | |
| Mi.Host AMI Software Module *for Electric or Combo* | | | | | |
| **Additional Software Modules** | | | | | |
| Number of Metering End Points | 3,001 – 5,000 | 5,001 – 25,000 | 25,001 – 50,000 | 50,001 – 100,000 | 100,001 or more |
| Mi.Data Homeowner Access Portal | $4,500.00 | | | | |
| Demand Response Management *(Electric Only)* | | | | | Call for Quote |
| Outage Notification & Transformer Reporting | | | | | |
| Mi.Host Water Alerts Portal | | | | | |
| **Hardware Maintenance** | | | | | |
| Handheld PC – ea. | $1,200.00 PER HANDHELD - TOTAL = $1,200.00 | | | | |
| Mi.Hub Collector – ea. | $450.00 PER COLLECTOR - TOTAL = $900.00 | | | | |
| CELLULAR BACKHAUL FEES | $420.00 PER COLLECTOR - TOTAL = $840.00 | | | | |

**Hot Rod Mobile AMR System**

| Annual Software Maintenance & Support for AMR Software Perpetual License (Non-Hosting) | | | | | | |
|---|---|---|---|---|---|---|
| Number of Metering End Points | 1 – 2,500 | 2,501 – 10,000 | 10,001 – 25,000 | 25,001 – 50,000 | 50,001 – 100,000 | 100,001 or more |
| Route Management Software *(EZ Reader Software Suite)* | | | | | | |
| **Hardware Maintenance** | | | | | | |
| Handheld PC | | | | | | |
| Street Machine (Receiver Only) | | | | | | |



# SALES QUOTATION

| | | | |
|---|---|---|---|
| Phone | (704) 278-2221 | Created Date | 1/9/2017 |
| Company Address | 10210 Statesville Blvd<br>Cleveland, NC 27013 | Quote # | 00011380-00 |
| | | | |
| Attn: | David Rowe | Quote Expires | 6/30/2017 |
| Prepared For | Harris County MUD #281 (TX) | Quote Name | Harris County MUD #281 TX - Mi.Net 2017-04-28 |
| Address | 17707 Old Louetta Rd | | |
| City,State,Zip | Houston, TX 77070 | Payment Terms | 2% 30 Days, NET 31 Days |
| Phone: | (281) 376-8802 | ARO | Stock to 30 Days |
| Fax: | (281) 376-0002 | Freight Terms | FOB - Cleveland, NC - Full Freight Allowed on Net Order of $500.00 or more |
| | | Territory | 521 |
| | | Prepared By | Fred Quintero |

## Comments & Considerations

Should you have any questions, please do not hesitate to contact Fred Quintero

## Quote Line Items

| Units | Part Number | Line Item Description | Sale Price | Extended Net |
|---|---|---|---|---|
| 798 | V0GA438 | 5/8X3/4 420 CMP,SSR,5' MINODE4 | $190.00 | $151,620.00 |
| 123 | V0KS238 | ".452 BZ BB SSR 5' MINODE4 | $281.05 | $34,569.15 |
| 1 | W0NN138 | 1-1/2" 562 NYL 2B SSR 5' MINODE4 | $425.15 | $425.15 |
| 20 | W0PN138 | 2" 572 NYL 2B SSR 5' MINODE4 | $464.20 | $9,284.00 |
| 1 | Q0R0410M4 | MVR350,TPORT,SG,TRL6,25'NODE4 | $1,210.20 | $1,210.20 |
| 1 | Q0S0410M4 | MVR650,SG,BBX,TOUT,TRL6,NODE4 | $1,587.00 | $1,587.00 |
| 2 | MS-G4-AC-B-3G | MI.HUB+ XR AC 3G | $4,290.00 | $8,580.00 |
| 2 | LABOR COLLECTOR 1 | UTILITY OWNED TANK < 150' | $3,600.00 | $7,200.00 |
| 2 | MS-G-M-YR | MI.HUB COLLECTOR MAINT | $450.00 | $900.00 |
| 2 | MS-CELLULAR | MINET 3G BACKHAUL PER MIHUB | $420.00 | $840.00 |
| 4 | MSW-NODE4-DC | MINODE4 REPEATER-DC | $720.00 | $2,880.00 |
| 4 | LABOR REPEATER 1 | DC XR WITH POLE SET | $1,122.00 | $4,488.00 |
| 1 | MS-H4-HH-INST-KIT | MITECH H4HANDHELD W/INSTALLKIT | $5,400.00 | $5,400.00 |
| 1 | MS-H-M-YR | MI.TECH HH/INSTALL MAINT-YR | $1,200.00 | $1,200.00 |
| 1 | MSW-S-PH-ALL-5K | AMI WATER PREM HOST ALL 3K-5K | $10,000.00 | $10,000.00 |
| 1 | MS-S-PH-HO-5K | AMI PREM HOST MI.DATA 3K-5K | $4,500.00 | $4,500.00 |
| 1 | MS-PROJECT-2.5K | PROJECT MGMT <2.5 POINTS | $20,000.00 | $20,000.00 |
| 1 | MS-T-TRAIN-DAY | SOFTWARE TRAINING - PER DAY | $1,800.00 | $1,800.00 |
| 1 | MS-T-PROP | RF PROPAGATION STUDY | $4,500.00 | $4,500.00 |
| 1 | MS-T-CIS-FILE | CIS FILE INTERFACE | $10,500.00 | $10,500.00 |
| 1,000 | MS-TTLM | MINODE PIT MOUNT/HANGER v4 (Ships in multiples of 8) | $6.00 | $6,000.00 |
| 1 | V0GD438 | 5/8 X 3/4 RDM PB SSR 5'NODE4 | $315.00 | $315.00 |



# SALES QUOTATION

**TOTAL**

| Tax Applied | Tax Exempt | Quote Total | $287,798.50 |

Force Majeure — Mueller Systems shall not be liable to Customer, End User, or any other person, and Mueller Systems' performance under these terms and conditions shall be excused, if and to the extent that any failure or delay in Mueller Systems' performance of one or more of its obligations hereunder is caused by a Force Majeure Event (as defined below). A Force Majeure Event shall include without limitation acts of God or the public enemy; compliance with any order of any governmental authority; fire; flood; unusually severe weather; shortages or unavailability or other delay in delivery; lack of or delay in transportation; laws, rules, regulations, raw material price increases that exceed twenty percent or restrictions which apply to raw material purchases; war, acts of terrorism, rebellion, insurrection, epidemics; accidents, explosions, civil disorder; strikes, lockouts, or other labor disputes; or any other condition beyond the reasonable control of Mueller Systems.