IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HARRIS COUNTY MUNICIPAL UTILITY DISTRICT NO. 281 and HARRIS COUNTY MUNICIPAL UTILITY DISTRICT NO. 282, | § § § § § | |
| *Plaintiffs*, | § § | CIVIL ACTION 4:22-CV-3648 |
| v. | § § | JURY TRIAL DEMANDED |
| MUELLER SYSTEMS, LLC, MUELLER SYSTEMS, LLC and MUELLER WATER PRODUCTS, INC., | § § § § § | |
| *Defendants.* | § | |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

COME NOW, Plaintiffs HARRIS COUNTY MUNICIPAL UTILITY DISTRICT NO. 281 and HARRIS COUNTY MUNICIPAL UTILITY DISTRIT NO. 282, and file this Second Amended Complaint, and respectfully show the following.

## I.
## THE PARTIES

1.  Plaintiff, HARRIS COUNTY MUNICIPAL UTILITY DISTRICT NO. 281 ("Plaintiff 281" or "District 281"), is a governmental agency operating under and governed by the laws of the State of Texas. Plaintiff's principal office is located at 1300 Post Oak Blvd., Ste. 2400, Houston, Texas 77056.

2.  Plaintiff, HARRIS COUNTY MUNICIPAL UTILITY DISTRICT NO. 282 ("Plaintiff 282" or "District 282") (together with District 281, the "Plaintiffs" or "Districts"), is a governmental agency operating under and governed by the laws of the

State of Texas. Plaintiff's principal office is located at 1300 Post Oak Blvd., Ste. 2400, Houston, Texas 77056.

3. Defendant, MUELLER SYSTEMS, LLC, is a Delaware limited liability company with its principal office at 10210 Statesville Blvd., Cleveland, North Carolina 27013 or 1200 Abernathy Rd., Suite 1200, Atlanta, GA 30328, ("Mueller" or "Mueller Systems") and does business in the State of Texas. Mueller Systems may be served through its registered agents, CT Corporation System, at 160 Mine Lake Ct., Suite 200, Raleigh, NC 27615 or 289 S. Culver St., Lawrenceville, GA 30046, or Corporation Service Company, at 251 Little Falls Dr., Wilmington, DE 19808. Mueller Systems has appeared in this action.

## II.
## JURISDICTION AND VENUE

4. This court has original jurisdiction over the subject matter of this case, pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiffs and Defendant, and the amount in controversy exceeds the minimum jurisdictional requirements.

5. This Court has personal jurisdiction over Defendant because Defendant consented to jurisdiction of the federal and state courts maintaining jurisdiction over Harris County, Texas for all purposes of any legal proceedings arising under or relating to the Master Agreements between Plaintiffs and Defendant. *See* Exhibits **A and B** (Master Agreements) at 5.

6. Venue is proper in this district because all parties agreed to consent to venue

in Harris County, Texas, for purposes of any legal proceedings arising under or relating to the Master Agreements between Plaintiffs and Defendant, *see* Exhibits **A and B** (Master Agreements) at 5, and because the acts or omissions giving rise to this dispute occurred in Harris County, Texas.

## III.
## FACTUAL ALLEGATIONS

7. Mueller Systems markets and sells water metering products. On or about January 9, 2017, Mueller Systems' representative, Fred Quintero, presented a pitch to the Districts' board of directors (the "Board") for the purchase and installation of a water meter system that would be the answer to all of the Districts' remote meter reading problems. Not only would Defendant's water meter system save the Districts time and money by allowing the Districts' operators to read water meters remotely, but Defendant's water meters were just as accurate as traditional water meters—if not more—and promised better efficiency, reliability and leak detection functions. In fact, during his pitch, Mr. Quintero declared, "You install them and then you don't have to worry about them." In other words, Mueller Systems promised that the meters were reasonably fit and suitable for the purpose the Districts intended. Most importantly, Mr. Quintero's pitch included the assurance that Mueller Systems' water meters would improve the Districts' water accountability rates. Water accountability rates are the most important consideration of a MUD district when it comes to selecting water meters systems as it refers to the percentage of water purchased by the district that is accounted for by water meters in order to pass the cost on to the district's residents. Greater accountability means the water meters are more accurately

reading the amount of water consumed by the residents.

8. However, Mr. Quintero failed to inform the Districts that Mueller Systems had received numerous return orders for their water systems since at least 2012 and continuing into 2017—material information that the Districts were unable to consider as part of their evaluation of Mueller Systems.

9. Based on Mr. Quintero's representations (as well as his omissions), Mueller Systems subsequently entered into a written agreement, titled the Mueller Systems Master Agreement, with District 281 on or about February 6, 2017, and with District 282 on or about July 15, 2017 ("Contracts").

10. Per the Contracts, Mueller Systems was to provide approximately 2,000 residential water metering products, network infrastructure and setup for the equipment, and related software and services to the Districts in exchange for payment. Moreover, Mueller Systems expressly warranted that its water meters would be "free from defects in material and workmanship" and/or guaranteed to perform to certain American Water Works Association ("AWWA") standards.

11. The water meters provided by and installed by Mueller Systems were defective and not fit for their intended use. Beginning in 2019, District 281's operator noticed significant issues with the meters, including but not limited to (i) meters becoming stuck and therefore not registering any of the water that flowed through them, and (ii) meters under registering the amount of water flowing through them to the Districts' residents. These issues resulted in lost revenues due to low water accountability percentages, increase in customer appeals due to the incorrect estimation of water bills, and

the loss of trust from the residents.

12. District 281 notified Mueller Systems multiple times of the defective water meters and the problems it experienced beginning in 2019. In fact, Eric Merrick, a representative of Mueller Systems, flew from Spokane, Washington to attend District 281's February 3, 2020, Board meeting to address these issues. There, Mr. Merrick represented that Mueller Systems was continuing to investigate the cause of District 281's issues with the water meter system but due to these allegedly novel issues, the most effective solution would be to replace the malfunctioning portions of the water meters. Accordingly, in April 2020, Mueller Systems provided nearly 1,000 replacements for the malfunctioning water meters to District 281 in an attempt to remedy the ongoing issues. Mr. Merrick's representations regarding the novelty of District 281's problems with the water meters, however, proved to be untrue.

13. At the February 3, 2020 Board Meeting, Mr. Merrick provided District 281's operator a document identifying the same widespread problems with Defendant's meters in locations all across America.[1] Far from being an issue of first impression, the Districts' problems with the meters were extensive and well known to Mueller Systems. One document provided to the Districts' Operator is titled "High Failure Rate accounts needing

---

[1] *See* Exhibit **C**. Plaintiffs' First Amended Complaint represented that Mr. Merrick provided Defendant's knowledge of the issues via email. However, upon further investigation, it was discovered that Mr. Merrick provided the information on a thumb drive when he attended the February 3, 2020 Board Meeting for District 281. The Excel spreadsheet included on the thumb drive is very voluminous. As such, Plaintiffs have attached excerpts from the Excel spreadsheet as Exhibit C. Plaintiffs can provide the Court with the entirety of the Excel spreadsheet if the Court would prefer.

action_v1204" and identifies thirty other special purpose districts and municipalities experiencing high failure rates with Defendant's meters. *See* Exhibit **C**. Tellingly, Defendant's own document estimated failure rates as high as 50% for many of its customers. *Id*. The issues with Defendant's meters were so widespread that Defendant instructed its employees to implement various "Get Well Plan[s]" for affected customers. *Id*. Despite Defendant's longstanding knowledge of these extensive problems, Defendant failed to inform the Districts of these material issues at any point during the Districts' negotiations with Defendant for the purchase of these meters. Plaintiffs can only deduce that this significant omission by Defendant was deliberate and intended to induce Plaintiffs into buying Defendant's defective meters. Had Mueller Systems informed the Districts of the pervasive and widespread nature of these defects, the Districts would not have entered into the Contracts to purchase Mueller Systems' water meters.

14. Unsurprisingly, the issues with Mueller's meters continued to plague the Districts. Less than one year later in January of 2021, Mueller Systems' replacement meters in District 281 malfunctioned again, exhibiting the same and other problems as before. Specifically, the water meters collectively and consistently under-registered water flow, and several meters had to be individually replaced because they became permanently stuck.

15. Subsequently, in or around February 2022, District 282 recognized the same problems with Defendant's meters, which included but were not limited to (i) meters becoming stuck and therefore not registering any of the water that flowed through them,

and (ii) meters under-registering the amount of water flowing through them to the District's residents. Although District 282 sent Mueller Systems notice of the defective water meters and the problems it experienced, Mueller Systems has refused and/or failed to address or remedy the ongoing issues with the water meters. Therefore, these issues resulted in lost revenues, increase in customer appeals due to the incorrect estimation of water bills, and the loss of trust from the residents.

16. The Districts, through their operator, Water District Management Company, Inc. ("WDM"), and District 282's engineer, LJA Engineering, Inc. ("LJA") conducted several accuracy tests to isolate those issues and to eliminate any other possible factors. LJA conducted acoustic testing of the Districts' water lines to ensure that there were no breaks or leaks in the Districts' water distribution systems. WDM isolated the Districts' water systems from each other, and from the water systems of other districts, in order to eliminate those connections as possible factors. WDM also tested the water meters themselves to confirm they were under-registering water usage and looked for leaks in the meters to identify the source of the issues. The Districts also tested various subparts of the water meters to isolate and identify what was causing the under-registering water usage. After extensive testing by the Districts' consultants, it was determined that the registers on Mueller's water meters were the cause of the Districts' low water accountability. These issues with the water meters and system continue to cause the Districts significant damages, including lost revenues, increased operations costs due to billing inaccuracies, and the loss of trust and goodwill of the Districts' customers.

17. Although the Districts notified Mueller Systems of the malfunctioning water

meters again, to this day, Defendant has not corrected the issues with the water meters it installed.

18. On information and belief, Defendant's water meters and associated equipment have manufacturing and/or design defects, leading to meter reading failures and other significant problems. Defendant knew or should have known that its water meters and associated equipment were defective, or prone to malfunctioning, yet failed to disclose this information to the Districts. Instead, Defendant concealed the inherent defects in the water meters and the system.

19. While Mueller Systems had previously replaced the water meters, this "band-aid" approach is useless for the Districts because of the scale and pervasiveness of the issues with the failed metering products and the billing system. Defendant's water meters have been and continue to be defective and unusable, and as a result, the Districts continue to face ongoing, significant problems. In addition to the damages the Districts have already sustained, the Districts anticipate replacing the entire metering system, which will cost hundreds of thousands of dollars.

20. Due to the poor water accountability resulting from Mueller's faulty meters, the Districts began replacing Defendant's water meters at their own cost in November and December of 2022. To date, District 281 has replaced approximately 84% of Mueller Systems' meters, and District 282 has replaced approximately 73% of Mueller Systems' meters. After these replacements, the Districts' combined water accountability has increased significantly from 76.7% in October of 2022 to 95.8% in March of 2023. It is clear from these statistics that Defendant's products were the cause of the District's poor

water accountability rates, and therefore, the loss of revenue resulting from the District's inability to properly account and charge for water usage purchased and paid for by the Districts.

## IV.
## CAUSE OF ACTION – FRAUD IN THE INDUCEMENT

21. Plaintiffs incorporate by reference the allegations contained in the paragraphs above, as if set out in full herein.

22. In meetings, presentations, and/or other discussions, Mueller Systems misrepresented to the Districts that their residential water meters would function properly and that they were reasonably fit and suitable for their intended use. Specifically, Mueller Systems' representative, Fred Quintero, presented a pitch to the District 281's Board on January 9, 2017 and to the District 282's Board on or about June 7, 2017 in which he represented that Defendant's water meters were just as accurate, or more accurate, than traditional water meters and promised that Defendant's water meters were more efficient, reliable, and capable of detecting leaks when in fact they were not. Mueller Systems, through Mr. Quintero, stated that the Districts only needed to install the water meters and not worry about them, which the Districts relied on. Defendant made these representations with the knowledge that their systems were not in fact more efficient, reliable, and capable of detecting leaks for the purpose of inducing Plaintiffs to purchase their water meter systems. A document provided by Mueller Systems representative, Erik Merrick, on February 3, 2020 evidences Defendant's knowledge that their product would not operate as promised by Mr. Quintero. In fact, based on the high failure rate of Defendant's product

as experienced by other customers, it would be impossible for Defendant's water meters to be more efficient, reliable, and capable of detecting leaks than traditional meters. Defendant omitted the fact that it was experiencing similar issues with the same product that it was selling to Plaintiffs. Because Defendant had knowledge as early as 2012 according to the document provided by Mr. Merrick on February 3, 2020, Defendant's representative, Mr. Quintero, would have known Defendant could not provide Plaintiffs with the products he promised to Plaintiffs. Moreover, Mueller Systems expressly warranted that its water meters would be "free from defects in material and workmanship" and/or guaranteed to perform to certain AWWA standards.

23. As discussed above, Defendant's water meters and associated equipment are defective; therefore, they produce incorrect readings of water use and exhibit other significant problems. Although Mueller Systems' representatives maintained ongoing contact with the Districts, Defendant did not disclose this material information and concealed the inherent defects in the water metering products, their associated equipment, and the system until February 3, 2020- after Defendant had induced Plaintiffs to enter into their Contracts knowing their product would not work as promised.

24. Mueller Systems made the above referenced misrepresentations and concealment with actual knowledge of their falsity, or alternatively, recklessly, as a positive assertion and without knowledge of their truth. Specifically, Eric Merrick provided District 281's operator a document identifying the same widespread problems with Defendant's meters in various locations across the U.S. as early as 2012. As such, Mueller Systems already knew of the problems and defects with its water metering

products, their associated equipment, and the system prior to and/or at the time the Districts executed the Contracts with Defendant.

25.   Mueller Systems made these misrepresentations and concealed material facts to induce the Districts to execute the Contracts.  In fact, the Districts executed the Contract in reliance on Mueller Systems' material misrepresentations and concealment and authorized Mueller Systems to install their water meters and associated equipment.

26.   Because of Defendant's false representations and concealment of material facts, the Districts sustained significant damages described herein.  Further, the Districts' injuries resulted from Mueller Systems' actual fraud, gross negligence, or malice, which entitles Plaintiffs to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

## V.
## CAUSE OF ACTION – FRAUD BY NONDISCLOSURE

27.   Plaintiffs incorporate by reference the allegations contained in the paragraphs above, as if set out in full herein.

28.   Throughout multiple meetings, presentations, and/or other discussions, Mueller Systems represented to Plaintiffs that their water meters would function properly and that they were reasonably fit and suitable for their intended use.  Specifically, Fred Quintero of Mueller Systems presented a pitch to District 281's Board on January 19, 2017 and District 282's Board on or about June 7, 2017 during which he represented that Defendant's water meters were just as accurate, or more accurate, than traditional water meters and promised that Defendant's water meters were more efficient, reliable, and

capable of detecting leaks when in fact they were not. Mueller Systems, through Mr. Quintero, stated that the Districts only needed to install the water meters and not worry about them, which the Districts relied on. Defendant made these representations with the knowledge that their systems were not in fact more efficient, reliable, and capable of detecting leaks for the purpose of inducing Plaintiffs to purchase their water meter systems. It was not until February 3, 2020, after Plaintiffs had purchased and installed Defendant's water meters, that Erik Merrick, a Mueller Systems representative, provided Plaintiffs with a document evidencing Defendant's knowledge that their product would not operate as promised by Mr. Quintero. Based on that document, Defendant's other customers experienced failure rates as high as 50% with the same product being sold to Plaintiffs. Moreover, these customers experienced and notified Defendant of their issues prior to Plaintiffs' purchase and installation of Defendant's water meters.

29.    Defendant had a duty to disclose to Plaintiffs its knowledge of the issues other customers were experiencing with Defendant's water meters. Defendant breached its duty by representing to Plaintiffs that their water meters were just as accurate, or more accurate, than traditional water meters and promised that Defendant's water meters were more efficient, reliable, and capable of detecting leaks when in fact they were not. Defendant further stated, through Mr. Quintero, that the Districts only needed to install the water meters and not worry about them. Defendant failed to disclose the issues with the same products that had been reported to Defendant by other customers. Defendant's claim that its water meters were more efficient, reliable and capable of detecting leaks and failure to disclose the significant issues it was experiencing with its water meters created a false

impression that Plaintiffs would not have the same or similar issues with their use of Defendant's water meters.

30. Defendant's failure to disclose pertinent information regarding the performance of its water meters was material to Plaintiffs' purchase of the water meters. Plaintiffs executed the Contracts in reliance on Defendant's material omissions and misrepresentations that its water meters would be more efficient, reliable and capable of detecting leaks than traditional water meters.

31. Defendant knew Plaintiffs were unaware of the issues and did not have the same opportunity to discover the issues other customers of Defendant were encountering with Defendant's water meters. Defendant's other customers had reported issues with Mueller Systems water meters prior to Plaintiffs' execution of the Contracts, but these complaints were not disclosed to Plaintiffs nor did Defendant's share this information with Plaintiffs.

32. Mueller Systems was deliberately silent about the issues with its water meters when it had a duty to disclose these issues because its failure to disclose the issues created a false impression that its water meters would be more efficient, reliable, and capable of detecting leaks than traditional water meters.

33. Mueller Systems concealed these material facts to induce the Plaintiffs to execute the Contracts. In fact, the Districts executed the Contract in reliance on Mueller Systems' material misrepresentations and concealment and authorized Mueller Systems to install their water meters and associated equipment.

34. Because of Defendant's concealment of material facts, the Districts sustained significant damages described herein as a result of acting without the knowledge of the undisclosed facts. Further, the District' injuries resulted from Mueller Systems' actual fraud, gross negligence, or malice, which entitles Plaintiffs to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

## VI.
## CAUSE OF ACTION – UNJUST ENRICHMENT

35. Plaintiffs incorporate by reference the allegations contained in the paragraphs above, as if set out in full herein.

36. Defendant has unjustly enriched themselves to the Districts' detriment by the acts, omissions, and torts described in this Complaint.

37. Relying on Mueller Systems' misrepresentations about the quality, characteristics, and performance of their water meters, the Districts entered into separate agreements with Mueller Systems. The Districts paid Mueller Systems hundreds of thousands of dollars to install the water metering products and water meter systems based on Defendant's fraudulent representations as set forth above. However, the equipment is inaccurate, flawed, or otherwise deficient as described herein.

38. Defendant's retention of the Districts' payments is unconscionable. Defendant secured a financial benefit by fraud and/or other wrongful means, and the Districts continue to sustain damages due to Defendant's defective water meters. Therefore, Plaintiffs request that the Court order Defendant to provide full restitution, disgorge all revenue and obtained funds, and pay all actual and consequential damages.

## VII.
## VICARIOUS LIABILITY

39. Plaintiffs would show that at all times relevant to this case, any acts that were committed by the employees, servants, and/or agents of Defendant were made within the course and scope of their employment with Defendant. Therefore, Defendant is vicariously liable for all of the acts and/or omissions of any of their employees, servants, and/or agents which were committed within the course and scope of their employment with Defendant.

## VIII.
## STATUTE OF LIMITATIONS TOLLED

40. Plaintiffs incorporate by reference the allegations contained in the paragraphs above, as if set out in full herein.

41. Plaintiffs would show that there are no applicable bars to its claims based upon any statute of limitations. Specifically, Defendant engaged in fraud and fraudulent inducement by misrepresenting to the Districts that their residential water meters would function properly and that they were reasonably fit and suitable for their intended use. Defendant represented that its water meters were just as accurate, or more accurate, than traditional water meters and promised that its water meters were more efficient, reliable, and capable of detecting leaks. However, Defendant's water meters and associated equipment were defective, requiring Defendant to replace nearly 1,000 water meters by May 2020 for District 281. Defendant has not yet addressed or replaced their defective water meters and associated equipment for District 282. Defendant did not disclose the material information regarding the water meters and concealed the inherent defects in the water metering products, their associated equipment, and the system to induce the Districts

to execute the Contracts.

42.　As such, Plaintiffs plead the Discovery Rule, because Plaintiffs did not discover, nor could Plaintiffs have discovered by the exercise or reasonable diligence, the existence of their cause(s) of action against Defendant until January of 2021 for District 281 and February of 2022 for District 281, which are less than two years prior to the date on which Plaintiffs filed this lawsuit.

43.　Plaintiffs further plead any tolling provisions set forth by the Texas Supreme Court, the Governor of the State of Texas, and any other rules or statutes related to the current COVID-19 situation.

## IX.
## DAMAGES

44.　Defendant's intentional conduct, and other actions described above proximately caused Plaintiffs' injuries. Plaintiffs have suffered significant damages, including but not limited to the following:

    a. Actual damages;

    b. Any attorney's fees allowed in this case to the extent permitted by law;

    c. Punitive/exemplary damages;

    d. Any incidental and consequential damages permitted by law and/or equity;

    e. All costs of court;

    f. All pre-judgment and post-judgment interest; and

    g. Any and all damages in law and in equity allowed in this case.

45.　All of the above damages sought in this case are within the jurisdictional

limits of this Court.

## X.
## INTEREST

46. Plaintiffs are entitled to recover all pre-judgment and post-judgment interest which has and will accrue in accordance with the applicable provisions of Texas law. Thus, Plaintiffs hereby seek recovery of all pre-judgment and post-judgment interest at the maximum interest rate allowed by law.

## XI.
## CONDITIONS PRECEDENT

47. All conditions precedent have been performed or have occurred.

## XII.
## JURY DEMAND

48. Pursuant to Texas Rule of Civil Procedure 216, Plaintiffs respectfully request a trial by jury in this matter and tenders the appropriate fee.

## XIII.
## PRAYER

49. WHEREFORE, Plaintiffs, HARRIS COUNTY MUNICIPAL UTILITY DISTRICT NO. 281 and HARRIS COUNTY MUNICIPAL UTILITY DISTRICT NO. 282, respectfully request that Defendant MUELLER SYSTEMS, LLC be cited to appear and file an answer herein, and that on final hearing Plaintiffs have judgment against Defendant for all of the damages and relief set forth above, in addition to all other damages Plaintiffs may be justly entitled to at law and in equity.

Date: July 14, 2023

    Respectfully submitted,

    DANIELS & TREDENNICK, PLLC

    By: */s/ Heath A. Novosad*
    Heath A. Novosad
    Texas State Bar No. 24037199
    heath@dtlawyers.com
    Mary Rodman Crawford
    Texas State Bar No. 24109766
    maryrodman.crawford@dtlawyers.com
    6363 Woodway Drive, Suite 700
    Houston, TX 77057

    *ATTORNEYS FOR* PLAINTIFFS

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed and served upon all attorneys of record using the Court's CM/ECF system on the 14th day of July 2023.

    */s/ Heath A. Novosad*
    Heath A. Novosad